**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SULTAN ESTEBESOV,

Petitioner,

v.

SAM OLSON, Chicago Field Office
Director, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT., *et al.*,

Respondents.

Case No. 26-cv-1165

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Petitioner Sultan Estebesov's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the Court denies the petition.

## BACKGROUND

Petitioner, a native and citizen of Kyrgyzstan, presented himself for inspection at a port of entry on February 20, 2023. [1] ¶ 1. Petitioner was inspected and lawfully paroled into the United States under INA § 212(d)(5), with Form I-94s authorizing his stay through February 19, 2024. [1] ¶ 2. That same day, Petitioner was issued a Notice to Appear ("NTA") which stated: "You are an arriving alien." [1-9] at 1.

Petitioner has lived in the United States without issue since his arrival; he has obtained a valid work permit and a commercial driver's license and he worked lawfully as a truck driver. [1] ¶ 4. Petitioner filed an application for asylum and his merits hearing was scheduled for August 29, 2028. [1] ¶ 5.

1

By a notice dated January 30, 2025, Petitioner was ordered by Immigration and Customs Enforcement ("ICE") to check in at the ICE Chicago Field Office on February 2, 2026. [1] ¶ 6. Petitioner appeared as directed and was taken into ICE custody. [1] ¶ 6.

Petitioner filed this petition the same day. [1]. Petitioner argues that he is wrongfully being held under 8 U.S.C. § 1225(b), and that he should either be released or provided a bond hearing pursuant to 8 U.S.C. 1226(a).

## DISCUSSION

The primary issue between the parties concerns the statutory authority under which Petitioner is detained.[1] Petitioner argues that he is detained under § 1226(a), which entitles a detainee to a bond hearing. Respondents contend that he is detained under § 1225(b)(2)(A), which subjects aliens to mandatory detention without opportunity for a bond hearing. *See Bakytbek Adraimov v. Brison Swearingen*, No. 26-CV-1471, 2026 WL 776463, at \*1 (N.D. Ill. Mar. 19, 2026).

This Court (and the large majority of district courts around the country confronted with the issue) has previously concluded that in cases where an alien enters the United States without presenting for inspection and is subsequently detained, that alien is entitled to a bond hearing in accordance with § 1226(a). *See Barco Mercado v. Francis*, 2025 WL 3295903, at \*4 n.22 (S.D.N.Y. Nov. 26, 2025) (collecting citations

---

[1] Respondents also argue that the Court lacks jurisdiction over this action pursuant to 8 U.S.C. § 1252(g), 1252(b)(9), and 1242(a)(2)(B)(ii). For the reasons the Court has explained in prior decisions, *e.g., Garcia Rios v. Noem*, No. 25-CV-13180, 2025 WL 3124173, at \*1 (N.D. Ill. Nov. 7, 2025), the Court rejects those arguments.

2

to 350 decisions adopting the majority view).[2] Courts applying this view have relied in part on the Supreme Court's decision in *Jennings v. Rodriguez*. There, the Court explained that ". . . § 1226 applies to *aliens already present* in the United States . . .". *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (emphasis added). Conversely, 1225(b)'s mandatory detention provisions apply to aliens "arriving" in the United States. *Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025). Petitioner argues that because he has been "present" in the United States since the date of his parole on February 20, 2023, the Court should conclude that § 1226(a) governs his detention, as it has done in prior cases.

The Court would agree if not for the fact that, unlike the petitioners in many recent cases, Petitioner here entered the United States as a humanitarian parolee. The INA provision regarding humanitarian parole provides the following:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, **but such parole of such alien shall not be regarded as an admission of the alien** and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served **the alien shall forthwith return or be returned to the custody from which he was paroled** and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

---

[2] The Court notes that this while this view reflects the majority of district courts' holdings, this view is not uniform. *See* [14] at 4 (collecting cases where a district court held that § 1225(b)'s mandatory detention provisions apply to those already present in the country). Further, the Fifth and Eighth Circuits adopted this minority view. *Herrera Avila v. Bondi*, No. 25-3248 (8th Cir. Mar. 25, 2026); *Buenrostro-Mendez v. Bond*, 166 F.4th 494 (5th Cir. 2026). The Seventh Circuit has endorsed the majority position in the context of a motion to stay, *see Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), and the Second Circuit has likewise endorsed the majority position. *Cunha v. Freden*, No. 25-3141-pr (2d Cir. Apr. 28, 2026)

3

8 U.S.C. § 1182(d)(5)(A) (emphasis added). EOIR regulations further provide that "[a]n arriving alien *remains an arriving alien even if paroled* pursuant to section 212(d)(5) of the Act, *and even after any such parole is terminated or revoked.*" 8 C.F.R. § 1001.1 (emphasis added). The regulations also provide that "parole shall be *automatically terminated* without written notice . . . at the expiration of the time for which parole was authorized[.]" 8 C.F.R. § 212.5(e)(1)(ii) (emphasis added).

§ 1182(d)(5)(A)'s application here implicates what is sometimes called the "entry fiction," where an alien who is in fact present in the United States is nonetheless treated for due process purposes as if they are outside the border. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 192 (2020) (Sotomayor, J., dissenting). But the fiction is "well established and carries with it constitutional implications." *Montana Vargas v. Olson*, No. 26 C 1204 (N.D. Ill. Feb. 27, 2026) (Dkt. 10.). The Supreme Court has explained that noncitizens "who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are treated for due process purposes as if stopped at the border," *Thuraissigiam*, 591 U.S. at 139 (emphasis added); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188–89 (1958) (immigrant who was paroled into the interior of the country "was still in theory of law at the boundary line and had gained no foothold in the United State[s].").

When Petitioner was granted parole, it did not change his legal status. And as § 1182(d)(5)(A) provides, upon the termination of his parole, he is to be returned to the custody from which he was paroled. His NTA indicates that at the time of his parole, he was treated as an "arriving alien," [1-9], which would subject him to the mandatory

4

detention provisions of § 1225(b). When Petitioner's parole terminated, then, he was (and continues to be) an arriving alien who is subject to mandatory detention under § 1225(b).

To be clear, the Court does not hold here that *every* illegal alien who was paroled into the United States is subsequently subject to detention under § 1225(b) upon termination of their parole. Courts confronted with this issue have held that former parolees cannot be held under § 1225(b) in several different circumstances. *See Munoz Materano v. Arteta,* 804 F. Supp. 3d 395, 418–21 (S.D.N.Y. 2025) (holding that revocation of parole without individual determination violated due process); *Bakytbek Adraimov v. Brison Swearingen*, No. 26-CV-1471, 2026 WL 776463 (N.D. Ill. Mar. 19, 2026) (holding petitioner was detained under § 1226(a) where he was released on his own recognizance after his parole was terminated); *Coalition for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48 (D.D.C. 2025) (holding parolees can never be detained under § 1225(b)). But Petitioner does not make any argument under which the Court could afford him relief. In fact, neither the petition nor Petitioner's reply brief mention § 1182(d)(5)(A) at all.

Petitioner points to numerous cases in his support, but each involves a petitioner who either was at some point released on his own recognizance under § 1226(a) after having his parole terminated, *see Gomes v. Hyd*e, 804 F. Supp. 3d 265, 273 (D. Mass. 2025), or one who was never released on humanitarian parole, *see Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025); Miguel v. Noem,* No. 25 C 11137, 2025 WL 2976480, at *1 (N.D. Ill. Oct. 21, 2025); *Flores v. Olson*, No. 25 C

5

12916, 2025 WL 3063540, at *1 (N.D. Ill. Nov. 3, 2025); *Vasquez Gonzalez v. Olson*, No. 25 C 13162, 2025 WL 3158191, at *1 (N.D. Ill. Nov. 12, 2025). Each case thus says nothing about the effect of § 1182(d)(5)(A) on an alien in Petitioner's position.

Petitioner urges the Court to apply the three-factor test from *Mathews v. Eldridge* and find that his detention violates due process. The *Eldridge* asks the Court to consider (1) "the private interest that will be affected by the official action;" (2), "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3), "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Addressing the first factor, Petitioner argues that he has a fundamental liberty interest in freedom from detention. [16] at 6. But Petitioner does not reckon with the entry fiction, nor with the Supreme Court's holding in *Thuraissigiam* that "aliens who arrive at ports of entry—even those paroled elsewhere else in the country for years pending removal—are treated for due process purposes as if stopped at the border." 591 U.S. at 139 (cleaned up). Paroled aliens like Petitioner "ha[ve] only those rights regarding admission that Congress has provided by statute . . . the Due Process Clause provides nothing more." *Id.* at 140. And for the reasons discussed, Congress has not provided aliens arriving at the border the rights that Petitioner seeks here. There is thus little risk that any deprivation would be erroneous.

6

The Court recognizes the degree to which this holding is unfair. Petitioner presented himself at a port of entry, followed the correct steps, obtained legal work authorization, and dutifully responded to a summons from ICE. For his efforts, he was detained and is being held without bond. Conversely, the petitioners in the cases cited *supra* generally chose to enter the United States illegally. By doing so and remaining "present," they obtained legal protections that Petitioner is not been afforded. Whatever the Court thinks about the unfairness of this approach, its responsibility "is not to evaluate the wisdom of the legislative determinations reflected in the statute, but instead to construe and apply the provisions that Congress enacted." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 203 (1985). The plain language of the relevant statute provides that upon termination of his parole, Petitioner was subject to mandatory detention under § 1225(b). Accordingly, his petition for writ of habeas corpus [1] is denied without prejudice. Enter Judgment. Civil case terminated[3]

E N T E R:

Dated: May 5, 2026

*Mary M Rowland*
_____

---

[3] The Petition alleges as a claim for relief "Violation of the Suspension Clause of the U.S. Constitution." [1] ¶ 89. The Suspension Clause provides that the "Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause does not provide for a right of action if violated; rather, it ensures that the writ of habeas corpus is not suspended. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *2 (D. Ariz. Feb. 24, 2026) (collecting cases). Because "Petitioner has not been precluded from bringing this habeas petition and asserting constitutional and statutory challenges to his detention, [and the] Court [has not] been precluded from reviewing and ruling on it," the Suspension Clause has not been violated. *Id.*